FILED
04/24/2019
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 18, 2018

## STATE OF TENNESSEE v. CHOLLY DEMARCUS HARRIS

**Appeal from the Criminal Court for Knox County**
**Nos. 92103, 95667   Steven Wayne Sword, Judge**

_____

### No. E2018-00534-CCA-R3-CD

_____

The Knox County Criminal Court revoked the probationary sentences of the Appellant, Cholly Demarcus Harris, and ordered that he serve the balance of his effective eleven-year sentence in the Tennessee Department of Correction (TDOC).  On appeal, the Appellant acknowledges that he violated his probation but contends that the trial court abused its discretion by ordering that he serve his sentences in confinement.  Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Jonathan Harwell (on appeal) and Julia Gautreau (at trial), Knoxville, Tennessee, for the appellant, Cholly Demarcus Harris.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Kenneth F. Irvine, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On July 9, 2009, the Appellant was charged by information in case number 92103 with possession of less than one-half gram of cocaine with intent to sell, a Class C felony. That same day, he pled guilty to the charge and was sentenced as a Range I, standard offender to three years in the TDOC.  On September 17, 2009, the trial court held a hearing, suspended the sentence, and placed the Appellant on probation.

On June 30, 2010, a probation violation affidavit was filed, alleging that the Appellant violated his probation by (1) being arrested on June 15, 2010, for the manufacture, sale, and delivery of Schedule II and VI drugs, possession of a weapon during the commission of a felony, and possession of drug paraphernalia; (2) being in possession of a handgun at the time of his arrest; and (3) being in possession of illegal drugs at the time of his arrest. The trial court issued an arrest warrant, and the Appellant was taken into custody. On September 10, 2010, the trial court revoked his probation and placed him in the Community Alternative to Prison Program (CAPP) for three years. A condition to CAPP was that he live at Steps House.

On September 30, 2010, the Appellant was charged by information in case number 95667 with one count of possession of less than one-half gram of cocaine with intent to sell, a Class C felony, and one count of possession of not less than one-half ounce but not more than ten pounds of marijuana with intent to sell, a Class E felony.[1] That same day, he pled guilty to the charges and was sentenced as a Range II, multiple offender to concurrent sentences of eight and two years, respectively. He was to serve the effective eight-year sentence in CAPP consecutively to his three-year sentence in case number 92103.

On March 8, 2012, a violation affidavit was filed in both cases, alleging that the Appellant violated CAPP's rules and regulations by (1) using illegal narcotics; (2) testing positive for synthetic marijuana; (3) being dishonest with his case manager by denying his use of synthetic marijuana and by claiming he had been robbed of money he had just withdrawn from the bank; (4) fraternizing with people "who use, deal or traffic" illegal substances; (5) missing curfew calls on October 8, 2011, January 25, 2012, and February 5, 2012; (6) being $856 in arrears on court costs; and (7) being $40 in arrears on CAPP fees. On May 9, 2012, the Appellant's case manager further alleged that he violated CAPP by (8) leading her to believe he was living at Knoxville Area Rescue Ministries when was never registered there; (9) not being truthful about his residence, which made her unable to verify he was at his residence by curfew; and (10) being discharged from the Steps House program on April 28, 2012, for leaving the halfway house without permission. The trial court issued an arrest warrant. On July 13, 2012, the trial court revoked the Appellant's placement in CAPP and ordered that he serve the balance of his sentences in case numbers 92103 and 95667 in the TDOC.

The Appellant completed a boot camp program while he was in prison, and he was released on enhanced probation on May 17, 2013. On January 10, 2014, he was transferred from enhanced probation to regular probation. On October 3, 2017, his probation officer filed a probation violation affidavit, alleging that the Appellant violated

---

[1] The information alleged that the offenses occurred on June 15, 2010.

probation by (1) being arrested on September 22, 2017, for driving on a suspended license, simple possession, and failure to yield right of way; (2) not reporting his arrest to his probation officer; and (3) possessing .4 grams of a white, powdery substance at the time of his arrest. An arrest warrant was issued.

No witnesses testified at the Appellant's February 2018 revocation hearing. The Appellant acknowledged violating his probation but requested that the trial court place him back on probation. Defense counsel argued that while the Appellant's "history of supervision leaves much to be desired," the Appellant had made "very positive changes" by self-reporting to the Comprehensive Community Services (CCS) program, completing the program, and calling defense counsel "all the time" to let counsel know "how things were going and how he was progressing." Defense counsel introduced the Appellant's CCS Discharge Summary into evidence. According to the summary, the Appellant's condition at the time of his admission was "poor," but his condition at the time of his discharge was "good." The summary stated that the Appellant completed a twenty-eight-day treatment program, that he participated in group lectures and seminars, completed treatment plans, completed an aftercare plan that included attending Narcotics Anonymous meetings, and received positive reports for volunteering his time to help around the CCS facility. Defense counsel also introduced into evidence a letter from the Appellant's probation officer, stating that he would accept the Appellant back on probation. The State opposed probation, noting that this was the Appellant's third probation revocation, and argued that he had "earn[ed] his way" to prison.

The trial court stated that it had spent "a lot" of time reviewing the Appellant's case and that "it was the history that made me believe that he is not a suitable candidate for probation anymore." The trial court said that from the time of the Appellant's initial guilty plea in 2009, "[h]e's been in revocation status every year until he got revoked and sent to the penitentiary and came out on boot camp, and what really was the last straw for me is these last two arrests." The court stated that it was going to give him "credit" and that the Appellant had "over 500 days jail service with 476 on Capp time. . . . [T]hat's how long we've been working to try to make this work, and I'm just out of patience[.]" The Appellant stated on his own behalf that he had completed "the treatment" and that he thought he deserved "one more chance." The trial court responded that the Appellant had had "eight years of one more chances," revoked his probation, and ordered that he serve the balance of his sentences in the TDOC.

## II. Analysis

The Appellant does not contest that he violated his probation. However, he contends that the trial court abused its discretion by ordering that he serve the balance of his effective eleven-year sentence in confinement because his latest violations were

"relatively minor" and came after several years of successful probation and because he completed a one-month treatment program "as a way of showing his rehabilitative potential." He asserts that the trial court's decision was "arbitrary and unreasonable" and that "the only logical and reasonable outcome" would be to place him back on probation. The State argues that the trial court did not err. We agree with the State.

Upon finding by a preponderance of the evidence that an appellant has violated the terms of his probation, a trial court is authorized to order the appellant to serve the balance of his original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310, -311(e); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Probation revocation rests in the sound discretion of the trial court and will not be overturned by this court absent an abuse of that discretion. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995); see State v. Pollard, 432 S.W.3d 851, 864 (Tenn. 2013) (concluding that abuse of discretion with a presumption of reasonableness is the appropriate standard of appellate review for all sentencing decisions). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010).

The Appellant admits that he violated his probation. This court has repeatedly cautioned that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. at Nashville, Feb. 10, 1999); see State v. Timothy A. Johnson, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. at Nashville, Feb. 11, 2002). This was the Appellant's third probation violation. Additionally, at the time of the revocation hearing, he was still serving a three-year sentence that he had received more than eight years previously because he could not abide by the terms of alternative sentencing. In our view, the trial court was more than patient with Appellant. Accordingly, we have no hesitation in concluding that the trial court did not err by ordering that he serve the balance of his sentences in confinement.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA MCGEE OGLE, JUDGE

- 4 -